1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TROSALIND L. CALDWELL                    No.  2:15-cv-1002-KJN

12                  Plaintiff,

13        v.                                  ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                    Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

19   ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and

20   Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social

21   Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that

22   the Commissioner erred by finding that plaintiff was not disabled from October 2, 2009, her

23   alleged disability onset date, through the date of the final administrative decision.  (ECF No. 19.)

24   The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary

25   judgment.  (ECF No. 20.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 21.)

26   _____

27   [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties
     voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF
28   Nos. 8, 10.)

                                               1

1    After carefully considering the parties' written briefing, the court's record, and the

2    applicable law, the court DENIES plaintiff's motion for summary judgment, GRANTS the

3    Commissioner's cross-motion for summary judgment, and AFFIRMS the final decision of the

4    Commissioner.

5    I.    <u>BACKGROUND</u>

6    Plaintiff was born on August 3, 1962, has a high school education, is able to communicate

7    in English, and previously worked primarily in retail-type positions.  (Administrative Transcript

8    ("AT") 35, 244, 316, 318.)[2]  In January 2012, plaintiff applied for DIB and SSI, alleging that her

9    disability began on October 2, 2009, and that she was disabled primarily due to posttraumatic

10   stress disorder ("PTSD"), a back injury, depression, diabetes, asthma, chronic bronchitis, and

11   hepatitis C.  (AT 24, 106-07, 210, 212, 317.)  After plaintiff's application was denied initially and

12   on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"),

13   which took place on November 20, 2013, and at which plaintiff, represented by an attorney, and a

14   vocational expert ("VE") testified.  (AT 43-77.)  The ALJ subsequently issued a decision dated

15   February 21, 2014, determining that plaintiff had not been under a disability, as defined in the

16   Act, from October 2, 2009, plaintiff's alleged disability onset date, through the date of the ALJ's

17   decision.  (AT 24-37.)  The ALJ's decision became the final decision of the Commissioner when

18   the Appeals Council denied plaintiff's request for review on April 1, 2015.  (AT 1-5.)  Plaintiff

19   then filed this action in federal district court on May 8, 2015, to obtain judicial review of the

20   Commissioner's final decision.  (ECF No. 1.)

21   II.   <u>ISSUES PRESENTED</u>

22   On appeal, plaintiff raises the following issues: (1) whether the ALJ erroneously

23   discounted the opinion of plaintiff's treating psychiatrist; and (2) whether the ALJ improperly

24   evaluated the credibility of plaintiff and her daughter.

25   _____

26   [2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order.

27   The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

28

1    III.    LEGAL STANDARD

2            The court reviews the Commissioner's decision to determine whether (1) it is based on

3    proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

4    as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

5    evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

6    F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

7    mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

8    Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

9    responsible for determining credibility, resolving conflicts in medical testimony, and resolving

10   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The

11   court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

12   interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

13   IV.    DISCUSSION

14          A.     Summary of the ALJ's Findings

15          The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's

16   standard five-step analytical framework.[3]  As an initial matter, the ALJ determined that plaintiff

17   _____

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social

18   Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled
     persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as

19   an "inability to engage in any substantial gainful activity" due to "a medically determinable
     physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel

20   five-step sequential evaluation governs eligibility for benefits under both programs.  See 20
     C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-

21   42 (1987).  The following summarizes the sequential evaluation:

22       Step one: Is the claimant engaging in substantial gainful activity?  If so, the

23       claimant is found not disabled.  If not, proceed to step two.

24       Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step

25       three.  If not, then a finding of not disabled is appropriate.

26       Step three: Does the claimant's impairment or combination of impairments meet or
         equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the

27       claimant is automatically determined disabled.  If not, proceed to step four.

28       Step four:  Is the claimant capable of performing her past relevant work?  If so, the

3

met the insured status requirements of the Act for purposes of DIB through June 30, 2014.  (AT

26.)  At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful

activity since October 2, 2009, plaintiff's alleged disability onset date.  (Id.)  At step two, the ALJ

found that plaintiff had the following severe impairments:  morbid obesity, lumbosacral strain, an

affective disorder, asthma, and a history of an anxiety-related disorder.  (Id.)  However, at step

three, the ALJ determined that plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part

404, Subpart P, Appendix 1.  (AT 27.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

("RFC") as follows:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform light work as defined in 20 C.F.R. §§ 404.1567(b) and
> 416.967(b), except that she can occasionally climb, balance, stoop,
> kneel, crouch, and crawl.  She must avoid concentrated exposure to
> fumes, odors, dusts, gases, poor ventilation, and hazards.  The
> claimant retains the abilities to engage in simple, repetitive tasks
> with occasional contact with supervisors, co-workers, and the
> public.

(AT 30.)

At step four, the ALJ determined that plaintiff was unable to perform any past relevant

work.  (AT 35.)  However, at step five, the ALJ found that, in light of plaintiff's age, education,

work experience, and RFC, and based on the VE's testimony, there were jobs that existed in

significant numbers in the national economy that plaintiff could perform.  (AT 35-36.)  Thus, the

ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from October

---

claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any
other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
evaluation process proceeds to step five.  Id.

1    2, 2009, through the date of the ALJ's decision.  (AT 36.)

2          B.      Plaintiff's Substantive Challenges to the Commissioner's Determinations

3                 *Whether the ALJ erroneously discounted the opinion of plaintiff's treating*

4    *psychiatrist*[4]

5          The weight given to medical opinions depends in part on whether they are proffered by

6    treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195,

7    1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking,

8    a treating physician's opinion carries more weight than an examining physician's opinion, and an

9    examining physician's opinion carries more weight than a non-examining physician's opinion.

10   Holohan, 246 F.3d at 1202.

11         To evaluate whether an ALJ properly rejected a medical opinion, in addition to

12   considering its source, the court considers whether (1) contradictory opinions are in the record;

13   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

14   treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

15   F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be

16   rejected for "specific and legitimate" reasons.  Id. at 830.

17         While a treating professional's opinion generally is accorded superior weight, if it is

18   contradicted by a supported examining professional's opinion (supported by different

19   independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

20   1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The

21   regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253

22   F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and

23   supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)

---

24

25   [4]  On appeal, plaintiff does not challenge the ALJ's evaluation of the evidence that relates to
    plaintiff's physical limitations.  Plaintiff's briefing focuses solely on the ALJ's evaluation of the

26   evidence concerning plaintiff's mental limitations.

27   [5]  The factors include:  (1) length of the treatment relationship; (2) frequency of examination; (3)
    nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency;

28   and (6) specialization.  20 C.F.R. § 404.1527.

1  (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881

2  F.2d at 751.  The opinion of a non-examining professional, by itself, is insufficient to reject the

3  opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

4        On July 29, 2013, plaintiff's treating psychiatrist, Dr. Javed Iqbal, completed a three-page,

5  check-the-box form, in which he diagnosed plaintiff with major depressive disorder (severe) and

6  opined, inter alia, that plaintiff had no useful ability to function in the areas of traveling in

7  unfamiliar places; completing a normal workday and workweek without interruptions from

8  psychologically-based symptoms; performing at a consistent pace without an unreasonable

9  number and length of rest periods; responding appropriately to changes in a routine work setting;

10  and dealing with normal work stress.  (AT 1088-90.)  He also assessed plaintiff's ability to

11  function in numerous other areas as seriously limited but not entirely precluded, and opined that

12  plaintiff would be absent from work more than twice a month.  (Id.)

13        In this case, because Dr. Iqbal's opinion was contradicted by other opinions in the record,

14  the ALJ was required to provide specific and legitimate reasons for discounting Dr. Iqbal's

15  opinion.  The court concludes that the ALJ properly discharged her obligation in that regard.

16        The ALJ reasonably found that Dr. Iqbal's opinion was inconsistent with the weight of his

17  own treatment records.  (AT 33-34.)  Indeed, although Dr. Iqbal's treatment notes at times

18  documented brief periods of exacerbated symptoms often associated with situational financial or

19  family stressors, they generally indicated that plaintiff's condition was stable and improving at a

20  moderate pace on her medications (with no complaints of side effects), and his treatment records

21  contain numerous substantially normal mental status examinations.  (AT 371, 373, 375, 377, 379,

22  390, 399, 412, 832-34, 853-57, 1138-43.)  Notably, in May 2013, not long before Dr. Iqbal's

23  severe July 2013 opinion, plaintiff reported "doing fairly well with her current medications

24  without any side-effects," and Dr. Iqbal noted that plaintiff was oriented with an appropriate

25  appearance, unremarkable psychomotor behavior, soft speech, a flat affect, euthymic mood, intact

26  memory, average intellect, cooperative attitude, normal attention, good reasoning, good impulse

27  control, good judgment, good insight, realistic self-perception, logical thought processes, and

28  unremarkable thought content.  (AT 879-83.)  Given that Dr. Iqbal's July 29, 2013 three-page

1  check-the-box form was itself conclusory and unsupported by any significant clinical findings or

2  rationale, the ALJ legitimately gave that extreme opinion little weight in light of its inconsistency

3  with the weight of Dr. Iqbal's treatment records.  See Meanel, 172 F.3d at 1114 (treating

4  physician's conclusory, minimally supported opinion rejected).

5       The ALJ also rationally observed that Dr. Iqbal's severe opinion was inconsistent with the

6  conservative treatment that plaintiff received.  (AT 34.)  Indeed, plaintiff was generally seen

7  about every 3 months for evaluation and medication management.  (Id.)  To be sure, it may well

8  be that plaintiff has limited resources and may not have been able to afford certain forms of

9  additional treatment.  However, the record contains no suggestion that Dr. Iqbal considered or

10 discussed additional treatment with plaintiff, but ultimately concluded that such additional

11 treatment was not feasible given plaintiff's limited income or insurance coverage.  As such, it was

12 not unreasonable for the ALJ to rely on the apparent inconsistency between the severity of Dr.

13 Iqbal's opinion and his relatively conservative course of treatment.

14      Finally, the ALJ also properly noted that Dr. Iqbal's opinion was inconsistent with other

15 record evidence, including the opinions of the state agency psychiatrists, who reviewed plaintiff's

16 records and opined that plaintiff was capable of sustained performance of simple repetitive tasks

17 with limited public contact.   (AT 34, 82-83, 113-14.)  Because the opinions of the state agency

18 psychiatrists were generally consistent with the mental status examinations and level of

19 symptoms reflected in Dr. Iqbal's treatment records, those opinions constitute substantial

20 evidence on which the ALJ was entitled to rely.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149

21 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not

22 alone constitute a specific, legitimate reason for rejecting a treating or examining physician's

23 opinion, it may constitute substantial evidence when it is consistent with other independent

24 evidence in the record.").

25      Accordingly, the ALJ did not err in her evaluation of Dr. Iqbal's opinion.

26      *Whether the ALJ improperly evaluated the credibility of plaintiff and her daughter*

27      In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of

28 Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

1
2
3
4
5
6
7

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

8
9
10

> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

11   Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the

12   ALJ is not required to believe every allegation of disabling pain, or else disability benefits would

13   be available for the asking...."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

14   "The ALJ must specifically identify what testimony is credible and what testimony

15   undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685,

16   693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

17   1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the

18   "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

19   between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

20   testimony from physicians and third parties concerning the nature, severity, and effect of the

21   symptoms of which [claimant] complains.'"  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.

22   2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

23   1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the

24   court "may not engage in second-guessing."  Id. at 959.

25   As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's

26   testimony.  Indeed, in light of plaintiff's alleged physical difficulties, depression, reduced

27   concentration, and social limitations, the ALJ limited plaintiff to a reduced range of light work

28

1    involving simple repetitive tasks and only occasional social interaction.  (AT 30.)  Nevertheless,

2    to the extent that plaintiff alleged symptoms and functional limitations beyond the RFC, the ALJ

3    provided several specific, clear, and convincing reasons for discounting plaintiff's testimony.

4        The ALJ properly found that plaintiff's testimony regarding a disabling degree of

5    symptoms and functional limitations was inconsistent with the opinion evidence, as properly

6    weighed, as well as the objective evidence in the record.  (AT 31-35.)  To be sure, "after a

7    claimant produces objective medical evidence of an underlying impairment, an ALJ may not

8    reject a claimant's subjective complaints based solely on a lack of medical evidence to fully

9    corroborate the alleged severity of pain."  Burch, 400 F.3d at 680.  However, although lack of

10   medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom

11   testimony, it is nevertheless a relevant factor for the ALJ to consider.  Id. at 681.

12       Furthermore, plaintiff's relatively conservative treatment was also a legitimate

13   consideration.  (AT 35.)  See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have

14   previously indicated that evidence of conservative treatment is sufficient to discount a claimant's

15   testimony regarding severity of an impairment").  As noted above, even though plaintiff may

16   have limited means, there is no indication that Dr. Iqbal or other treating providers recommended,

17   but were unable to pursue, additional treatment in light of plaintiff's financial circumstances.

18       Additionally, the ALJ reasonably relied on plaintiff's work record in discounting her

19   credibility.  The ALJ rationally observed that plaintiff had worked only sporadically during her

20   adult life, including prior to plaintiff's alleged disability onset date, which raised a question as to

21   whether plaintiff's continuing unemployment was actually due to her medically determinable

22   impairments.  (AT 35.)  As the ALJ further noted, there is evidence suggesting that plaintiff had

23   stopped working for reasons not related to her impairments.  (AT 35.)  Plaintiff testified that she

24   was terminated from her last position in retail sales at K-Mart in 2011 due to "[c]onfrontations

25   with the manager, no raises and it was starting to bother me, the people.  I was becoming a bad

26   sales person.  My attitude, you know, I was getting a lot of write-ups…."  (AT 49; see also AT

27   317 [noting that plaintiff stopped working in part due to being "frustrated with job and not being

28   promoted"].)

Finally, substantial evidence supports the ALJ's finding that plaintiff's activities of daily living were inconsistent with her allegations of disabling symptoms and limitations.  (AT 34-35.) "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting...Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, plaintiff was able to live alone in an apartment, shower and dress herself, cook, clean, wash dishes, do laundry, grocery shop, take walks (while stopping several times), take care of her cat, use public transportation, pay bills, handle bank accounts, watch television, and play cards/dominoes.  (AT 34, 56, 63-65, 272, 274-75.)  She spent a lot of time reading and enjoyed listening to music.  (AT 65.)   To be sure, the record also contains some evidence suggesting that plaintiff's activities were more limited.  However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one").  As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible.  But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as

1
2
3

          here, the ALJ has made specific findings justifying a decision to
          disbelieve an allegation of excess pain, and those findings are
          supported by substantial evidence in the record, our role is not to
          second-guess that decision.

4   Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  Therefore, the court concludes that the ALJ

5   properly evaluated plaintiff's credibility.

6         Plaintiff also contends that the ALJ did not address a statement submitted by plaintiff's

7   daughter, Rachel Caldwell.

8         "[C]ompetent lay witness testimony cannot be disregarded without comment" and "in

9   order to discount competent lay witness testimony, the ALJ must give reasons that are germane to

10  each witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal quotation and

11  citation omitted).  Here, the ALJ clearly considered the statement by plaintiff's daughter, because

12  it was specifically cited in the ALJ's decision.  (See AT 29.)   Moreover, plaintiff's daughter's

13  statement essentially echoed plaintiff's own testimony and, as discussed above, the ALJ already

14  provided specific, clear, and convincing reasons for discounting plaintiff's testimony, which are

15  equally germane to the third-party testimony.  As such, any error in not explicitly re-stating, or

16  incorporating by reference, the reasons given for discounting plaintiff's testimony with respect to

17  plaintiff's daughter's statement was harmless and remand is not warranted.  See Molina, 674 F.3d

18  at 1115-22.  Indeed, plaintiff's reply brief also appears to concede that the issue of plaintiff's

19  daughter's statement by itself does not warrant reversal.  (ECF No. 21 at 4.)

20  V.    CONCLUSION

21        In sum, the court finds that the ALJ's decision was free from prejudicial legal error and

22  supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY

23  ORDERED that:

24        1.      Plaintiff's motion for summary judgment (ECF No. 19) is DENIED.

25        2.      The Commissioner's cross-motion for summary judgment (ECF No. 20) is

26  GRANTED.

27        3.      The final decision of the Commissioner is AFFIRMED, and judgment is entered

28  for the Commissioner.

1        4.      The Clerk of Court shall close this case.

2        IT IS SO ORDERED.

3    Dated:  July 26, 2016

4

5                                                    _____
                                                     KENDALL J. NEWMAN
6                                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              12